UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HEARD,

        Petitioner,                Case Number 08-11357
                                                        Honorable David M. Lawson

v.

JERI-ANN SHERRY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION AND
AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Willie Heard, presently confined at the Baraga Maximum Correctional Facility in Baraga, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions of felonious assault, intentionally discharging a firearm at a dwelling, and possession of a firearm during the commission of a felony (felony firearm). The petitioner was found guilty of these crimes by a jury in the Wayne County, Michigan circuit court and was sentenced as a second felony habitual offender to concurrent prison sentences of three to six years for felonious assault and unlawful discharge of a firearm, plus a consecutive two-year prison sentence for felony firearm. The petitioner alleges that his constitutional rights were violated because he was denied the right to represent himself at trial. The respondent has filed an answer, asserting that the petitioner's claim lacks merit. The Court agrees that the petitioner's claim is meritless and will deny the petition.

I.

      The petitioner's trial in state court was a stormy affair. As recited in some detail below, the petitioner frequently interrupted defense counsel and the prosecutor during their questioning of the

witnesses, criticizing their interrogation, interposing frivolous objections, and occasionally asking questions of his own. But the trial proceeded to its conclusion, although it was suspended for about two weeks because of the shooting victim's hospitalization and resulting unavailability. After the break in the trial, the petitioner expressed his dissatisfaction with his lawyer and asked to represent himself. The trial court denied the request, and the case proceeded to a conclusion.

The facts of the case are straightforward. LaJuan Smith testified that he worked with the petitioner at a restaurant in Detroit. One evening while on the job, Smith decided to take a nap. He was awoken suddenly by a loud noise. He looked to the door and saw the petitioner standing with a shotgun in one hand and a pistol in the other. The petitioner walked away mumbling something, and Smith left the office when he had been napping to walk toward the kitchen area. It was then that he noticed he had been shot somewhere below the waist because he noticed wetness on the back of his pants. As he tried to leave the building, the petitioner fired another shot, striking Smith in the thigh. As Smith struggled to leave the building, the petitioner tried to force the door closed behind him, but he threatened to "blow the victim's brains out" once the victim had left the building.

Smith said he was begging for his life as the petitioner threatened him. Curiously then, the petitioner called 911, and an emergency unit came to the scene and transported Smith to the hospital. The state court of appeals opinion summarized the rest of the evidence as follows:

> The victim testified that he did not have a gun on his person during the incident, nor did he ever threaten defendant during the incident. Additionally, officers Kozlowski and Davis testified that they saw defendant holding a gun in each hand while standing over the victim, and Davis testified that he heard defendant tell the victim as he stood over the victim, "I told you I was going to . . . kill you." Officer Rocha testified that the handgun that was taken from defendant at the scene had to have its hammer manually pulled back each time that a shot was fired. Defendant acknowledged that he told the 911 operator, "I just went off the deep end and shot him."

*People v. Heard,* No. 262687, 2006 WL 3017970, at *4 (Mich. Ct. App. Oct. 24, 2006).

The jury found the petitioner guilty of the charged offenses, and the trial court sentenced him as an habitual offender, as noted earlier. The Michigan Court of Appeals affirmed the petitioner's conviction on direct appeal, and the state supreme court denied leave to appeal and the petitioner's motion for reconsideration. *People v. Heard*, 477 Mich. 1058, 728 N.W.2d 454 (2007) (table); *reconsideration den.* 478 Mich. 874, 731 N.W.2d 740 (2007) (table).

On or about March 31, 2008, the petitioner filed a petition for writ of habeas corpus in this Court, in which he argued that he had been denied the effective assistance of trial counsel and his right of self-representation. On April 24, 2008, the petitioner filed an amended petition that raised the same claims and made essentially the same arguments. The respondent filed an answer, in which he asserted that the petitioner had failed to exhaust his state court remedies with respect to his ineffective assistance of trial counsel claims. On February 12, 2009, this Court issued an order finding that the petitioner's ineffective assistance of counsel claims were not exhausted in the state Courts and directing the petitioner to file an amended petition that deleted his unexhausted claims, or in the to alternative move to hold his case in abeyance while he returned to the state courts to exhaust his ineffective assistance of counsel claims. On March 9, 2009, the petitioner filed an second amended petition that deleted his unexhausted ineffective assistance of counsel claims.

The petitioner now seeks a writ of habeas corpus on the sole ground that he was denied his right of self-representation.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, ---- U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures

to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner's main argument is that he was denied the right to represent himself at trial when the trial court refused his mid-trial request to discharge his attorney and proceed on his own. The record of events that led to this request is recited at length in the state court of appeals opinion on direct appeal. It is set forth here as well.

On the first day of trial, March 22, 2005, the state called six witnesses, including an investigating police officer, Robert Kozlowski. Defense counsel completed his cross-examination of that police officer, stating he had no more questions. The petitioner then spoke up, and the following occurred:

> DEFENDANT HEARD: Well, I have one. Could I ask one question? You don't seem to be doing a good enough job. They got a bullet hole in the chair and a bullet hole through him —
>
> MR. COOK [Defense counsel]: Now, listen —
>
> DEFENDANT HEARD: The police report said a bullet wind up in the wall. Was it another gun in there? Do they know what gun was that bullet fired from? Because only two came from that one, and the report shows a bullet in the wall.

>   They showed a bullet in the wall at butt level, at chair level. How did the bullet get in the wall? It didn't go through the chair and through him sitting in the chair. You ain't addressing these issues.

Trial Tr. March 22, 2005, at 158. The prosecutor then started his re-direct examination and asked the officer about the shotgun that had been seized. The defendant interrupted the officer's testimony, stating:

>   DEFENDANT HEARD: Objection! The shotgun was not used!
>
>   MR. COOK: Objection. Objection, your Honor.
>
>   THE COURT: Objection? What's the basis of the objection?
>
>   DEFENDANT HEARD: Objection. The shotgun is irrelevant to this case.
>
>   THE COURT: Excuse me.
>
>   DEFENDANT HEARD: It was not used.
>
>   THE COURT: Excuse me. Mr. Cook, what's the objection?
>
>   MR. COOK: Nothing, your Honor. I have no objection.

Trial Tr. March 22, 2005, at 160.

The trial judge excused the jury from the courtroom for its lunch break. When the jury had left the courtroom, the judge addressed the petitioner:

>   THE COURT: I think you should know that your yelling is only making you look bad to the jury. But if that's what you want to do, you go ahead and keep doing it.
>
>   DEFENDANT HEARD: I wasn't yelling.
>
>   THE COURT: The other thing — yes, you did. You yelled several times.
>
>   The other thing, you yelled "objection" about this rifle. The rifle is involved because it was taken at the scene because it was in your possession, according to them. . . . Legally, it's admissible. Mr. Heard's objection would have been overruled.

> Now, I suggest that you go back there and you talk to your lawyer, and you try and calm yourself down. But if you want to tact (sic) up in front of the jury, I'll let them see you, and they'll begin to think that you're a hothead, the kind of person who would take a gun and shoot somebody....
>
> DEFENDANT HEARD: But certain questions ain't being asked, ma'am.

Trial Tr. March 22, 2005, at 162-63.

After the lunch recess, the state called police investigator Joseph Rocha. He testified that he recovered a single-action revolver from the scene, explaining that the hammer of the pistol had to be pulled back each time a shot was fired. After defense counsel cross-examined him on that point and stated he had no more questions, the petitioner spoke out again:

> DEFENDANT HEARD: Will you grab the gun and see will it pull — will it —
>
> THE COURT: Oh, we can't. Excuse me. You can't do that in the courtroom.
>
> DEFENDANT HEARD: The gun will shoot without cocking it, and nobody wants to demonstrate to the jury if that gun will shoot without cocking it. It make it look like I had to be in control of cocking it every time. That gun will shoot without pulling that trigger back, and nobody will demonstrate.

Trial Tr. March 22, 2005, at 214. After Rocha finished testifying, the court told the lawyers outside the jury's presence that it would not allow demonstrations of the weapon in the courtroom, but the jury could inspect the unloaded firearm in the jury room during deliberations.

The next morning, the prosecutor sought a continuance because his last witness, the victim, LaJuan Smith, was in the hospital and unavailable. The parties agreed to adjourn the trial, and it resumed on April 6, 2005. However, before the jury was summoned to the courtroom, the petitioner and the court had this additional exchange:

> DEFENDANT HEARD: I do not wish this man to represent me anymore. He's not doing a job that seems to be in my best interest. He's not objecting to things that the prosecutor has said. He don't cross-examine witnesses.

-8-

He was telling me yesterday we're winning the case. Winning the case how? You've got people sitting up here saying the man was shot in the abdomen, when he could better have a person upon the stand like a doctor telling you where he was shot.

I'm charged with attempted murder. Murder is up above the waist, and the criteria for that is —

THE COURT: No, that's not true. Stop talking like that. That's foolish.

DEFENDANT HEARD: It's not?

THE COURT: No, sir. We've had people who bled to death from wounds in the leg. So, don't say it's up above the waist.

Now what else? And you'd better stand up when you talk to me because I'm still a Judge.

DEFENDANT HEARD: Oh, I'm sorry. I didn't know.

THE COURT: What else?

DEFENDANT HEARD: And I lose focus when I'm talking. I had an injury over there. I brought that issue to you. I lose focus.

But when the one guy was on — well, he didn't cross-examine this guy that was on the stand that said that he was driving down the street on Van Dyke, which he would be traveling about 35 miles an hour.

He don't come talk to me about no strategy. When you're driving 35 miles an hour, you're traveling 88 feet per second. And the words stated, "I will kill you," or Mr. Smith said, "I should kill you, M.F.," it only takes a second to say it. If you're 88 feet away, you're not going to hear this.

Mr. Tony Davis had to be a lip reader in order to see this from this distance — to see this. And it don't have a whole lot to do with the case. But it seems like they're just trying to hook the case up. Let the case represent what the case represents.

They threw extra bullets and .9mm exhibits in this case, and then they retracted them that didn't supposed to have nothing to do with the case. He ain't say nothing about that.

I just feel like I'm not being — I'm not being represented by this man. I'd rather speak on my own behalf because I know what happened. I was there. And questions

> I want asked, I think I could — I don't know the law, but I think I can better ask him and represent myself for the rest of the period of this trial. And if I sink myself, then let it be. At least I'm trying.
>
> THE COURT: I'm going to order that lawyer to stay here and continue this case.

Trial Tr., Apr. 6, 2005, at 4-6.

The Michigan Court of Appeals held the trial court did not err in denying the petitioner's request to represent himself. The appellate court first found that allowing the petitioner to represent himself at trial "would have unduly disrupted the proceedings, as evidenced by defendant's continuous interruption of trial with a barrage of meritless objections and ridiculous requests." *Heard,* 2006 WL 3017970, at *3. The court pointed out that the petitioner clearly stated that he did not know the law, which weighed heavily against allowing him to represent himself. The court also found relevant the fact that the self-representation request came late in the trial, with one other witness and the petitioner left to testify.

The Sixth Amendment grants a criminal defendant the right to represent himself in criminal proceedings. *Faretta v. California*, 422 U.S. 806, 834-35 (1975); *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007). To trigger this right, however, two conditions must be satisfied. First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Second, a defendant's request for self-representation must be made clearly and unequivocally. *Raulerson v. Wainwright*, 469 U.S. 966, 969-70 (1984); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1995). The right to self-representation is "waived if it is not timely and unequivocally asserted." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The right to self-representation also may be waived through conduct that indicates that the defendant is vacillating on the issue or has abandoned his

request altogether. *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000). Therefore, although a defendant has the right to represent himself in criminal proceedings, "the right to self-representation is not absolute." *Martinez v. Court of App. of Cal.*, 528 U.S. 152, 161 (2000).

In making a decision to permit self-representation, the trial court has an obligation to assess the defendant's competence as well. The defendant's level of competence is required to be higher than merely being competent to stand trial. *Indiana v. Edwards*, 554 U.S. 164, 172 (2008).

The state court did not unreasonably apply these federal principles when it determined that the petitioner's Sixth Amendment right to represent himself was not abridged. First, the petitioner did not invoke his right to self-representation until the third day of his trial. "Even where the right to self-representation is clearly invoked, it must be done . . . in a timely manner, and courts will balance any such assertion against considerations of judicial delay." *Martin,* 25 F.3d at 295-96. In *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986), the Sixth Circuit ruled that the state trial court did not err in denying the habeas petitioner's motion to represent himself when the motion was not made until the first day of trial and after the clerk had called the roll of jurors. *Id.* The Sixth Circuit concluded that the petitioner's request for self-representation, if honored by the trial court, "would have impermissibly delayed the commencement of the trial." *Id.* at 384. The petitioner's delayed request three days into the trial would have multiplied those complications, and the trial judge's denial of that request was within proper bounds. *Ibid.*; *see also Martin,* 25 F.3d at 296 n.3 (comparing the approval of the first-day denial in *Robards*, and concluding that the court's denial in that case, when the "motion was made after the trial was in full swing, is *a fortiori* a proper exercise of discretion").

-11-

Second, the trial court's decision properly accounted for the likelihood that the petitioner would have disrupted the proceedings had he been allowed to represent himself. As the court of appeals noted, the petitioner continually interrupted the trial with a number of frivolous or meritless objections and nonsensical requests. Although a criminal defendant has a right to conduct his own defense, he must be "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). Indeed, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta,* 422 U.S. at 834, n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)). Moreover, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Ibid.* The petitioner's conduct during the first two days of trial validated the wisdom of the trial court's refusal to allow the petitioner to continue unchecked by the guiding hand of trial counsel.

Finally, it was clear from several of the exchanges that the petitioner did not understand the law or rules of procedure and evidence. The petitioner even acknowledged that he often lost focus during the trial because of an unspecified injury. When faced with a defendant's request to represent himself, a trial court must determine whether the defendant's decision to proceed *pro se* is knowing, intelligent, and voluntary. *Faretta,* 422 U.S. at 835. Although "technical legal knowledge, as such, [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself," *Robards*, 789 F.2d at 384 (quoting *Faretta*, 422 U.S. at 836), it is clear from the petitioner's comments and behavior at trial that he lacked the ability to conduct his own defense effectively. The petitioner "neither exhibited a genuine inclination to conduct his own defense nor

-12-

manifested an ability to do so." *Ibid.* The trial court cannot be faulted for refusing the petitioner's request for self-representation.

The decision of the Michigan state courts refusing the petitioner's mid-trial request to represent himself was not contrary to or an unreasonable application of federal law.

B.

In his amended petition, the petitioner included a discovery request for all of the police reports, police video and audiotapes, medical reports, laboratory test results, and other materials. The petitioner also asked this Court to order the Michigan Department of Corrections (MDOC) to return his property to him. On May 21, 2009, this Court denied a similar request by the petitioner.

Habeas petitioners have no right to automatic discovery. *Stanford v. Parker*, 266 F. 3d 442, 460 (6th Cir. 2001). A district court has the discretion, under Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, to grant discovery to a petitioner in a habeas case upon a fact specific showing of good cause. *Ibid.* The court may permit discovery in a habeas case if the petitioner presents specific allegations that suggest that the facts, if fully developed, may lead the court to believe that federal habeas relief is appropriate. *See Johnson v. Mitchell,* 585 F.3d 923, 934 (6th Cir. 2009); *see also Lott v. Coyle,* 261 F.3d 594, 602 (6th Cir. 2001). However, Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004)(internal quotation omitted). A habeas petitioner's conclusory allegations are insufficient to warrant discovery under Rule 6. *Ibid.*

The petitioner has not supported his blanket request for discovery materials with specific allegations. Moreover, the materials sought by the petitioner would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor. *Stanford,* 266 F. 3d at 460.

This Court previously denied the petitioner's request for an order to require the MDOC to return his property because it amounts to a challenge to the conditions of his confinement. As this Court previously noted, "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of core [of the habeas corpus remedy] and may be brought pursuant to § 1983 in the first instance." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A court reviewing a habeas petition may not look into a habeas petitioner's complaints about prison conditions. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The Court once again will deny the petitioner's request for discovery and for the return of his property.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition and amended petitions for a writ of habeas corpus are **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   July 13, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2011.

                                        s/Deborah R. Tofil
                                        DEBORAH R. TOFIL